1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STACIA ALLEN,

                     Plaintiff,

v.

EDUCATIONAL COMMUNITY CREDIT
UNION; KAREN CANADAY and JOHN DOE
CANADAY, husband and wife, and the marital
community composed thereof; CHRIS
CANADAY, a single person, WOODBURY
FINANCIAL SERVICES, INC.; DIVERSIFIED
FINANCIAL CONCEPTS, INC.,dba DFC.,

                     Defendant.

No. C06-16MJP

ORDER ON DEFENDANT'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT ON THE
PLEADINGS UNDER FRCP 12(c)

     This matter comes before the Court on Defendant's Motion for Summary Judgment on the

Pleadings. (Dkt. No. 14). Defendant argues that Plaintiff's claims for employment discrimination,

hostile work environment, quid pro quo sexual harassment, public accommodation discrimination,

negligent supervision should be dismissed because the facts alleged in the pleading do not entitle her to

any relief under the Washington Law Against Discrimination (WLAD), or under the common law for

negligent supervision.  Having considered all relevant papers and pleadings, the Court hereby

GRANTS Defendant's motion for Partial Summary Judgment on the pleadings under Fed. R.

Civ.P.12(c) for gender discrimination, sexual harassment, quid pro quo sexual harassment and

negligent supervision claims, but DENIES Defendant's motion to dismiss Plaintiff's public

accommodation claim.

     Order-1

**BACKGROUND**

Ms. Allen was hired by EdCom in June 2002, and worked there until April 20, 2005, when she resigned. She worked at both EdCom branches located in Everett and Monroe as a Member Representative and as a Development and Training Specialist. During her employment with EdCom, Ms. Allen shared an office with Chris Canaday. Mr. Canaday was not an employee of EdCom. He was employed by DFC as a Financial Representative. It is alleged that EdCom contracted with DFC to provide financial services to its branches. However, the nature of the contract is not disclosed in the pleadings. Ms. Allen alleges that Mr. Canaday subjected her to sexual harassment which created a hostile working environment. Mr. Canaday made inappropriate references to Ms. Allen's breast size and how he would "like to see her in a wet T-Shirt contest." (See Plaintiff's Amended Complaint ¶ 2.2). He asked her "do you think anyone else is as turned on as I am with this situation?" Id. Mr. Canaday tried to look down Ms. Allen's shirt and told her that if she dropped her last name, she would have a porn name. Id. He also ogled the Plaintiff.

Ms. Allen purchased financial services from Mr. Canaday as required by her employer (EdCom). During her financial consultation Mr. Canaday made sexual comments to Ms. Allen. Ms. Allen claims that because of her gender, she was treated differently and subjected to sexual harassment when she purchased financial services offered by DFC.

Mr. Canaday is the son of Ms. Karen Canaday, the CEO of EdCom. Mr. Canaday attempted to use his influence with his mother to gain sexual favors from Ms. Allen. For example, Mr. Canaday would rub Ms. Allen's neck and back stating: "I can ask my mom if you can leave early to go home." (See Plaintiff's Amended Complaint ¶2.2). When Ms. Allen was promoted, Mr. Canaday took credit for her promotion and suggested that she owed him personal favors. He also cautioned her that her ability to hold onto her promotion depended on her behaviors towards him. When Ms. Allen made a sexual harassment complaint against Mr. Canaday, she was demoted back to the Member Service Representative position.

Order-2

Ms. Allen alleges that:

> [s]he made repeated complaints via telephone calls and emails to defendants Hartford and Woodbury Financial Services (WFS) and various supervisors at ECCU prior to being constructively terminated.... One complaint was made to Hartford Life on March 30, 2005 via email with a reply on March 31, 2005. Hartford denied responsibility and transferred the case to WFS for investigation. A request for assistance was made by the plaintiff on May 5, 2005 to defendant Woodbury Financial, and Woodbury Financial transferred the complaint to ECCU on May 9, 2005. A formal complaint was made by defendant to ECCU on or about April 21, 2005. In early May 2005, Plaintiff Stacia Allen also made specific complaints about Defendant Chris Canaday's behavior by email and voice mail to defendant DFC. DFC did not reply to Plaintiff Stacia Allen's email or voice mail for approximately two months.
> (See Plaintiff's Amended Complaint ¶ 2.4).

From January 2005 to April 2005, Ms. Allen alleges that Ms. Karen Canaday and other managing agents of EdCom pressured her not to disclose Mr. Canaday's actions. The sexual harassment actions of Mr. Canaday led Ms. Allen to end her employment with EdCom on April 20, 2005.

Plaintiff Stacia Allen is now suing Diversified Financial Concepts, Inc., ("DFC") under the Washington Law Against Discrimination ("WLAD") alleging employment discrimination, hostile work environment, quid pro quo sexual harassment, public accommodation discrimination, negligent supervision, assault and battery and outrage. DFC has moved for partial summary judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) requesting that the Court dismiss several of Plaintiff's claims (Title VII, WLAD and negligent supervision). However, DFC does not seek dismissal of Ms. Allen's claims for vicarious liability for assault and battery and outrage. (See Defendant's Motion for Partial Summary Judgment at 2 n.1).

## ANALYSIS

**A. Jurisdiction:**

DFC moves to dismiss Ms. Allen's Title VII and WLAD claims. Ms. Allen does not object to the Court dismissing her Title VII claims against DFC, but wishes to retain her Title VII claims against other defendants and her state claims against DFC. (See Plaintiff's Response Motion at 2 ¶ 1). Now

Order-3

1    that both parties have conceded to the dismissal of Title VII claims, it is within the Court's discretion

2    to retain supplemental jurisdiction over Ms. Allen's state claims. Herman Family Revocable Trust v.

3    Teddy Bear, 254 F.3d 802, 806 (9th Cir.2001). Since Ms. Allen's original federal claim and her state

4    claims form a part of the same case and controversy because they are based on the same nucleus of

5    operative facts, the Court can exercise supplemental jurisdiction over Ms. Allen's state claims. See

6    Munger v. City of Glasgow Police Dep't, 227 F.3d 1082, 1088 (9th Cir.2000) (finding supplemental

7    jurisdiction proper where state claims are based on same factual allegations as federal claims).

8    **B. Legal Standard for Motion for Judgment on the Pleadings.**

9          In considering a rule 12(c) motion, the Court must accept all material allegations of the

10   nonmoving party as true, and construe the pleadings in the light most favorable to the nonmoving

11   party. Doyle v. Raley's Inc., 158 F.3d 1012, 1014 (9th Cir.1998). A pleading's legal conclusions and

12   inferences will not be deemed admitted, Northern Ind. Gun & Outdoor Shows, Inc. v. City of South

13   Bend, 163 F.3d 499, 452 (7th Cir.1998), but  Rule 12(c) judgment will be granted if the pleadings

14   demonstrate that the moving party is entitled to judgment as a matter of law. Fajardo v. County of Los

15   Angles, 179 F.3d 698, 699 (9th Cir.1999). However, if a material issue of fact remains in dispute, the

16   court must deny the Rule 12(c) motion. Brittan Communications Int'l Corp.v. Southwest Bell Tel.

17   Co., 313 F.3d 899, 904 (5th Cir.2002). Judgment on the pleadings is only warranted where it appears

18   beyond doubt that the plaintiff will be unable to prove any facts to support the alleged claims for relief.

19   Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir.2002).

20   **C. Gender Discrimination**

21         Ms. Allen claims that she was discriminated against because of her sex and sexually harassed

22   by Mr. Canaday an employee of DFC. Washington Law Against Discrimination (WLAD)  prohibits

23   employment discrimination based on sex. See RCW 49.60.010, 030, 180. Also RCW 49.60.180(3)

24   makes it an unfair practice for "an employer to discriminate against any person in compensation or in

25   other terms or conditions of employment because of...sex," while  RCW 49.60.030(2) authorizes a

26         Order-4

1   person discriminated against in violation of WLAD to bring a civil action. The law that prohibits

2   employment discrimination runs against "an employer." "An employer" is defined as "any person

3   acting in the interest of an employer, directly or indirectly who employs eight or more persons..."

4   RCW 49.60.040(3).

5         It is undisputed that Ms. Allen was not employed by DFC. For that reason, DFC argues that

6   she has no standing to bring a discrimination action against DFC. Because Ms. Allen is not an

7   employee of DFC, Mr. Canaday cannot not be characterized as her co-employee for the purposes of

8   employee-employer discrimination. However, Ms. Allen is inviting the Court to extend the existing

9   law to include a non-employer and to consider two individuals working together, but employed by

10  different employers to be co-employees. The court declines Ms. Allen's invitation.

11        The term "employer" is defined in the statute and its definition must be interpreted by the court

12  to give effect to the legislature's intent and purpose of law. In re Estate of Little, 106 Wn.2d 269, 283

13  (1980). In so doing, the legislative definition controls. Seattle v. Shepherd, 93 Wn.2d 861, 866 (1980).

14  Since the statutory definition exists, the court does not need to look for another alternative definition

15  as Ms. Allen requests. She cites Burton v. Lehman, 153 Wash.2d 416, 423 (2005), to support her

16  argument that the court must remain careful when analyzing the plain language to avoid "unlikely,

17  absurd or strained results." But the analysis is misplaced because the court in Burton expressly stated

18  that where the statutory term is plain and unambiguous, "the court will glean the legislative intent from

19  the words of the statute itself, regardless of contrary interpretation[s]..." Burton,153 Wash.2d at 422.

20  It is only where the term is undefined and an alternative meaning is sought from somewhere else that

21  caution must be applied to avoid "unlikely, absurd or strained results." Id. In the instant case, the

22  intent of the legislature is to hold employers liable for discrimination and to make sure that employers

23  protect their employees against discrimination. Marquis v.City of Spokane, 130 Wn.2d 97, 108

24  (1996). Here, the duty to protect Ms. Allen against unlawful discrimination falls on EdCom, but not

25  DFC.

26        Order-5

1    Ms. Allen contends that the statutory definition of "employer" is not limited to an employee's

2    own employer. (Plaintiff's Response at 5). "Employer" is defined as "any person acting in interest of

3    an employer directly or indirectly, who employs eight or more persons..."RCW 49.60.040(3). Ms.

4    Allen argues that the grammatical phrase "directly and indirectly" means that  Mr. Canaday was acting

5    indirectly in the interest of DFC. The grammatical phrase, "directly and indirectly" was addressed in

6    Brown v. Scott Paper Worldwide Co., 143 Wn.2d 349 (2001). The issue in Brown was whether

7    supervisors could be individually liable for employment discrimination. The supervisors wanted the

8    court to define the employer as a person who employs eight or more people in order to exclude

9    themselves from liability. The court analyzed the statutory definition of an employer and recognized

10   that the words "directly and indirectly" can lead to different interpretations of the statute. Id. at 357.

11   The court concluded that the phrase "'person acting in the interest of an employer, directly' stands

12   alone," and applies to individual supervisors acting directly in the interest of their employer. Id. at 358.

13   The court stated that the clause "who employs eight or more persons" refers to the term "employer."

14   Id. In this case, both phrases are still limited to Ms. Allen's employer (EdCom) and its employees. The

15   term "directly" would only apply to Mr. Canaday if he were Ms. Allen's supervisor.

16   For the reasons mentioned above,  Ms. Allen could sue Mr. Canaday for individual liability if he

17   was her supervisor, but the plaintiff has described him as a "co-worker" not her supervisor. (See Plaintiff's

18   Response to Defendant's Motion at 6 ¶ 3). The law recognizes liability of supervisors because supervisory

19   employees who engage in discriminatory conduct share the intent or common purpose with the employer.

20   (See Tyson, 918 F.Supp.at  841). In addition, "the plain meaning of RCW.49.60.040(3) by its terms,

21   encompasses individual supervisors and mangers who discriminate in employment." Brown 143 Wn.2d

22   at 361.

23   The term "indirectly" is not explicitly defined by the Washington statute or case law but the

24   United States Supreme Court has interpreted it in Burlington Indus., Inc. v. Ellerth, 524 U.S. 742

25   (1998). Under 42 U.S.C § 2000e, the term "employer" means, "a person engaged in

26   Order-6

1    an industry affecting commerce who has fifteen or more employees for each working day in each of

2    twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a

3    person,..." Unlike Washington law, the federal law does not contain the phrases "direct or indirectly"

4    instead it uses the words "any agent" to mean any person indirectly working in the interest of an

5    employer.

6         The Supreme Court in <u>Ellerth</u> relied on Restatement (Second) of Agency § 219(2)(a) (1957)

7    for the proposition that an "employer acts with tortious intent, and <u>indirect</u> liability, where the agent's

8    high rank in the company makes him or her the employer's alter ego." <u>Ellerth</u>, 524 U.S. at 758.

9    Although the interpretation of Title VII of the Civil Rights Act is not binding to state claims, it is

10   instructive and provides support to the issue at hand. <u>Glasgow v. Gerogia-Pacific Corp.</u>, 103 Wn.2d

11   401, 406 (1985). The pleadings do not indicate that Mr. Canaday was a high ranking member of DFC

12   for the Court to find him DFC's "alter ego."

13        Although the overarching goal of WLAD is to eliminate discrimination in the workplace, it

14   would be a strained construction of the statute if the court extended the law to allow an employee to

15   sue a non-employer for actions of a non-supervisory employee, or a non-agent of an employer.

16        Ms. Allen also contends that the statutory definition of "employer" under RCW 49.60.040(3)

17   "does not state that it must be the victim employee's own employer." (Plaintiff's Response to

18   Defendant's Motion at 5 ¶ 2). This contention would be correct if Ms. Allen had provided the court

19   with the relationship of all the Defendants to this case. There are three corporate Defendants in this

20   case; EdCom, WFS, and DFC, but their relationship is unknown for the Court to assign liability.

21   Plaintiff claims that this case is "analogous to the independent contractor liability relationship" <u>Id</u>. at

22   11¶ 3. However, it is hard to analogize the contractual relationship without knowing the nature of the

23   contract. Even where there is an independent contractual relationship, an independent contractor must

24   retain the right to control the manner and means of work carried out by the contractor. <u>Kessler v.</u>

25   <u>Swedish Hosp. Medical Ctr.</u>, 58 Wn. App. 674, 679 (1990).  In contrast with the instant case, if DFC

26        Order-7

1   is presumed an independent contractor contracted by EdCom, it must retain the manner and means of

2   work carried out by EdCom for it to be liable. Since the pleadings do not tell the Court the nature of

3   the contractual relationship between EdCom, DFC and WFS, Plaintiff's contractual liability analogy

4   cannot be applied to the facts in this case.

5   **D: Sexual Harassment**

6          As already explained, Ms. Allen was not an employee of DFC. Therefore, her sexual

7   harassment claim against DFC under WLAD fails because the law requires such a claim to be imputed

8   to the employer. <u>Glasgow v. Georgia-Pacific</u>, 103 Wn.2d 401, 407 (1985).

9   **E: Quid Pro Quo Sexual Harassment**

10          Ms. Allen alleges a claim of quid pro quo sexual harassment by Mr. Canaday. She claims that

11  Mr. Canaday attempted to use his influence with his mother (Ms. Allen's employer) to gain sexual

12  favors from Ms. Allen such as back and neck rubbing. When she was promoted to the position of

13  Business Development and Training Specialist, Mr. Canaday took credit for her promotion and

14  implied that Ms. Allen "owed [him] personal favors as a consequence..." He also stated that "her

15  continued ability to hold the promotion was dependent upon" her behavior towards Mr. Canaday.

16  (Plaintiff's Complaint ¶ 2.2).

17          Quid pro quo sexual harassment is when an employer requires sexual favors from the employee

18  for job promotion. <u>Antonius v. King County</u>, 153 Wn.2d 256, 261(2004). Ms. Allen's quid pro quo

19  claim against DFC legally fails because Mr. Canaday was not Ms. Allen's supervisor and therefore had

20  no actual or apparent authority to make employment decisions concerning job promotions for EdCom.

21  <u>Thomson v. Berta Enters.</u>, Inc., 72 Wn. App.531, 538 (1994) (superseded by statute on other

22  grounds). <u>See</u> <u>also</u> <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 790-791(1998). The rationale for

23  this rule is that the actual or apparent authority invested in supervisory personnel to make employment

24  decisions inherently aids the supervisor in accomplishing the quid pro quo harassment and is an

25  essential component of quid pro quo sexual harassment claims. <u>Thomson</u>, 72 Wn. App. at 538-39.

26          Order-8

**F: Public Accommodation**

Ms. Allen alleges that Mr. Canaday subjected her to sex discrimination when she purchased her personal investments and insurance from DFC "as required by her own employer." (See Plaintiff's Response to Defendant's Motion at 8 ¶ 2). Ms. Allen contends that the financial services sold to her by Mr.Canaday as an employee of DFC fit the statutory definition of "public accommodation." Ms. Allen also argues that "she was not treated as a male would have been when seeking to obtain the same services." Id.

WLAD has two definitions pertaining to discrimination in a place of public accommodation. One bases liability upon a proprietor's denial of the "full and equal enjoyment" of a place of public accommodation, and another bases liability upon a proprietor's denial of "access to a place of place of public accommodation."

RCW 49.60.040 (9) defines "Full enjoyment" to:

> [i]nclude the right to purchase service, commodity, or article of personal property offered or sold on, or by, any establishment to the public..without acts directly or indirectly causing persons of any particular...sex...to be treated as not welcome, accepted, desired, or solicited.

and RCW 49.6.40(10) defines public accommodation to be:

> '[a]ny place of public resort, accommodation, assemblage, or amusement'[which] includes, but is not limited to, any place, licensed or unlicensed, kept for gain, hire, or reward, or where charges are made for admission, service, occupancy, or use of any property or facilities, whether conducted for the entertainment, housing, or lodging of transient guests, or for the benefit, use, or accommodation of those seeking health, recreation, or rest, or for the burial or other disposition of human remains, or for the sale of goods, merchandise, services...

Before analyzing Ms. Allen's claim, the Court must decide whether DFC is a place of public accommodation.  The WLAD requires that the provisions of the statue be liberally construed to eradicate invidious discrimination and any exceptions be construed narrowly. Tenino Aerie v. Grand Aerie, 148 Wn.2d 224, 247 (2002).  When applying the liberal construction of the provisions to

Order-9

determine whether DFC is a place of public accommodation, the Court will look at other jurisdiction

for instructive guidance. For example, the district court in New Jersey stated that "any person, bank,

banking organization, mortgage company, insurance company or other financial institution, lender or

credit institution" is place of public accommodation. <u>Tyson v. CIGNA Corp.</u>, 918 F.Supp.836,839

(N.J. 1996).  <u>See also</u> <u>Schiavo ex rel. Schindler v. Schiavo</u>, 403 F.3d 1289, 1293 (11th Cir. 2005) (

"private entities are considered public accommodations...if the operations of such entities affect

commerce." The court listed some of the private entities to include, "dry-cleaner, bank, barber shop,

beauty shop, travel service, shoe repair service, funeral parlor, office of an accountant or lawyer,

insurance office, professional office of health care provider..."); <u>(Daniel v. Paul</u>, 395 U.S. 298,302

(1969), the Supreme Court stated that an establishment which serves the public and affects commerce

is a place of public accommodation within the meaning of the Civil Rights Act of 1964); and <u>Eddy v.

Waffle House</u>, Inc., 335 F.Supp.2d 693, 697 (D.S.C 2004) ("the racial epithet of 'nigger' shows an

intent to discriminate on the basis of race. It also satisfies plaintiff's burden...of showing that he was

denied equal access to a place of public accommodation on the basis of race.)

Given the nature of services Ms. Allen purchased from DFC (personal investment and

insurance), it suffices to say that DFC is a place of public accommodation. However, Ms. Allen does

not contend that she was not allowed to purchase the services ( she was not denied access to a place

of public accommodation). She claims that while purchasing the services, she was subjected to sexual

harassment by Mr. Canaday (DFC's employee). In other words she was denied the "full and equal

enjoyment" of the services others enjoyed.

Defendant, citing <u>Fell v. Spokane Transit Authority</u>, 128 Wn.2d 618, 638 (1996), argues that a

public place of accommodation only applies to "facilities not services." (Plaintiff's Response at 7).

However, <u>Fell</u> is distinguishable from the instant case. First, <u>Fell</u> was analyzed under the Americans

Order-10

with Disability Act (ADA). Second the plaintiffs in Fell were making a plea for "entitlements." Id. at

639.  Fell is not applicable because Ms. Allen was not asking DFC for entitlements under the ADA.

Having determined that DFC is a place of public accommodation and that Ms. Allen

purchased her services, the claim now becomes more of a consumer claim than an employment sexual

harassment claim. This distinction was used in Arguello v. Conoco, Inc., 207 F.3d 803 (5th Cir.2000)

where the court  rejected the restriction on employer liability in employment cases to a consumer

action. The court stated:

> [i]n a public accommodation case the supervisory status of the discriminating employee
> is much less relevant than it is in an employment discrimination case... Also, in a public
> accommodation case...a rule that only actions by supervisors are imputed to the employer
> would result, in most cases, in a no liability rule. Unlike the employment context it is rare
> that in a public accommodation settings [sic] a consumer will be mistreated by a manager
> or supervisor. Most consumer encounters are between consumers and clerks who are non-
> supervisory employees.

Id. at 810. The Arguello court applied the general agency principle, embodied in the Restatement

(second) of Agency §219, that a master is subject to liability for the torts of his servants while acting in

the scope of their employment–and then looked to case law and treatises discussing Restatement

(Second) of Agency § 228 (detailing when conduct is within the scope of employment) to arrive at a

set of factors courts are to consider in determining when an employee's acts are within the scope of

employment. Id. at 810 (citing Domar v. Ocean Transp.Ltd v. Indep. Refining Co., 783 F.2d 1185,

1190 (5th Cir.1986).

Applying the logic of the Fifth Circuit,  Ms. Allen has raised sufficient material allegations in

her pleadings to defeat Defendant's motion in regards to the public accommodation claim.

**G: Negligent Supervision**

Negligent supervision creates a limited duty to control an employee for the protection of a

Order-11

third person. <u>Niece v. Elimview Group Home</u>, 131 Wn.2d 39, 48 (1997). Ms. Allen alleges that DFC failed to supervise Mr.Canaday which permitted him to carry out unlawful sexual harassment acts towards her. However, for Ms. Allen to establish a claim of negligent supervision against DFC based upon Mr. Canaday's harmful action, she must show that: (1) he presented a risk of harm to her, (2) DFC knew, or had a reason to know about Mr. Canaday's actions, and (3) DFC's failure to adequately supervise Mr.Canaday was the proximate cause of Ms. Allen's injury. <u>Id.</u> at 48-51.

Mr. Canaday's actions presented a risk of harm to Ms. Allen and others. Although Ms. Allen was not physically harmed by Mr.Canaday, she alleges that she was emotionally hurt and threatened due to the continued sexual harassment. The risk presented was allegedly enough that it caused Ms. Allen to leave her job. Furthermore, sexual harassment inflicts personal indignity, humiliation and disgrace. The fact that "ogling and back rubs" is not comparable to rape and molestation (as Defendant claims) does not defeat Ms. Allen's claim of negligent supervision. An emotional injury resulting from negligent supervision is enough to sustain a negligent supervision claim. <u>Francom v. Costco Wholesale Corp.</u>, 98 Wn. App. 845, 866 (2000). The question left for the Court to answer is whether DFC knew about Mr. Canaday's actions and did nothing.

Ms. Allen has not provided sufficient allegations to suggest that DFC knew, or in exercise of reasonable care, would have known of Mr. Canaday's actions. She admits that without more discovery, she has no way of knowing whether the Defendant knew. (See Plaintiff's Response at 10). She argues that because the actions of Mr. Canaday were so open and outrageous, his employer must have known about them. <u>Id.</u> However, there is no evidence to suggest that DFC knew about Mr. Canaday's actions. In her complaint, Ms. Allen alleges that on March 30, 2005, she made a complaint by email to Hartford Life which then transferred the complaint to WFS, but not DFC. But, Ms. Allen has failed to explain the relationship between Defendants for the Court to infer that an email sent to Hartford Life could serve as a constructive notice. Although the court is construing Plaintiff's factual

Order-12

allegations as true, it does not need to accept conclusory allegations of law or unwarranted factual inferences. <u>Pareto v. FDIC</u>, 139 F.3d 696, 699 ( 9th Cir.1998). Ms. Allen's suppositions that DFC should have known are not supported and therefore cannot defeat a motion for partial summary judgment on the pleadings. Because DFC did not know about the harassment until Ms. Allen had left her job, DFC cannot be held liable for failure to adequately supervise. For these reasons, Ms. Allen's negligent supervision cause of action is dismissed.

## CONCLUSION

Construing the pleadings and evidence in the light most favorable to the non-moving party (Ms. Allen), the Court GRANTS Defendant's 12(c) motion for gender discrimination, sexual harassment, quid pro quo sexual harassment and negligent supervision claims, but DENIES Defendant's motion to dismiss the public accommodation claim. Ms. Allen has set forth sufficient allegations consistent with her complaint for the public accommodation claim.

The Clerk is directed to send copies of this order to all counsel of record.

Date: May ___, 2006

_____
Marsha J Pechman
United States District Judge

Order-13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Order-14

14